IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMBOA DAVIS

    Plaintiff

v.

EQUITY HOMES, LLC

    Defendant

Civ. No.: PJM 09-0435

## MEMORANDUM OPINION

Jamboa Davis has sued Equity Homes, LLC for damages resulting from alleged defects in a dwelling Davis purchased from Equity Homes. Equity Homes has failed to answer or otherwise respond to the Complaint. The Clerk of the Court has entered Default in favor of Davis. Davis has now filed a Motion for Default Judgment against Equity Homes, seeking $1,055,379.08, plus punitive damages. For the following reasons, Davis will be GRANTED IN PART and DENIED IN PART and the Court will enter Final Judgment in favor of Davis and against Equity Homes in the amount of $55,109.

I.

In April 2007, Davis purchased a new dwelling (the model home in a development) from Equity Homes in Upper Marlboro, Maryland for $834,000. Several months after she moved into the home, one of the sump pumps—used to pump water out of the basement—failed. In January 2008, Davis's basement flooded twice within five days, causing extensive damage and making the home uninhabitable. Davis and her minor child were compelled to move into an apartment while the home was being repaired. In the course of addressing the problems with the home, professionals advised Davis that the flooding resulted

from defects in the foundation and/or pipes under the home. Davis learned that the home was built on a lot that contained large amounts of calcium in the ground, foundation, and water. Calcium buildup can clog drainage pipes and cause sump pumps to fail. Davis also learned that, prior to the sale, the basement had flooded and Equity Homes had repaired it, but Equity Homes had concealed and withheld this information from her.

Davis filed a Complaint in the Circuit Court for Prince George's County Maryland against Equity Homes and several other defendants. She served the Complaint on Equity Homes on January 28, 2009. The Complaint was removed to this Court on February 23, 2009. Subsequently, the Court dismissed several of the counts as well as all the defendants other than Equity Homes. The remaining counts in the Complaint against Equity Homes allege unfair and deceptive trade practices (count II), breach of contract (count III), negligence (count V), and fraud (count VI).

When Equity Homes failed to answer or otherwise respond to the Complaint, Davis moved for an entry of default against it. The Court granted Davis's Motion for Entry of Default but indicated that it would defer judgment with respect to damages until trial or final disposition.

On March 15, 2011, Davis filed her Motion for Default Judgment seeking $4,713,320.94. On July 29, 2011, after a teleconference with the Court, counsel for Davis filed a Supplemental Motion for Default Judgment, revising the requested relief to remove punitive damages in the amount of $3,630,541 and mortgage payments in the amount of $113,400 but adding the original down payment she had made on the home in the amount of $86,000, resulting in a total revised requested default judgment of $1,055,379.08 plus punitive damages. Davis argues that she is entitled to three categories of damages: (1) primary damages, consisting of (a)

the cost of repairing property damage ($5,860), (b) the cost of renting an alternate residence ($44,400) and storing personal property ($4,849) while the home was uninhabitable, (c) the cost of maintaining the property when it was uninhabitable, including property taxes ($20,407) and utilities ($2,186), and (d) the down payment she made on the home ($86,000); (2) secondary damages, comprising the loss of value of the home, which Davis alleges is the full contract price ($891,677.08); and (3) punitive damages in an amount the Court deems appropriate. As far as the Complaint shows, Davis remains the owner of the subject property, although it may be in a foreclosure proceeding brought by Davis's mortgage lender.

## II.

### A.

Where a default has been previously entered and the complaint does not specify the amount of damages, the court may enter a default judgment upon the plaintiff's application and notice to the defaulting party, pursuant to Fed. R. Civ. P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011). The Fourth Circuit has a "strong policy that cases be decided on their merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). Nevertheless, default judgment may be appropriate where the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

In determining whether to award default judgment, the court takes as true the well-pleaded factual allegations in the complaint as to liability, but not as to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Nevertheless, "it remains for the

court to consider whether the unchallenged facts constitute a legitimate cause of action." *Baltimore Line Handling, Co.*, 771 F. Supp. 2d at 540 (quoting 10A Wright, Miller & Kane, Federal Practice & Procedure, § 2688, at 60–61 (3d ed. 1998).

Since Equity Homes has failed to respond throughout, all of Davis's factual allegations other than those pertaining to damages are deemed admitted. Fed. R. Civ. P. 8(b)(6); *Ryan*, 253 F.3d at 780. That said, the Court takes this case for what it really is—an action for breach of contract. All the remaining counts in the Complaint are subsumed in that count.[1] *See Hall v. Lovell Regency Homes Ltd. P'ship*, 708 A.2d 344 (Md. Ct. Spec. App. 1998). The Court grants default judgment in favor of Davis as against Equity Homes for breach of contract.

**B.**

The Court turns to the appropriate measure of damages and considers "affidavit and other documentary evidence" in order to determine the precise amount of damages to be awarded. *Maloney v. Disciples Ltd.*, LLC, No. 1:06CV00124, 2007 WL 1362393, at *2 (M.D.N.C. May 8, 2007); *see also DirecTV Inc. v. Yancey*, No. Civ.A. 404CV00011, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that Plaintiff "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits"); *Virgin Records Am., Inc. v. Lacey*, 510 F.Supp.2d 588, 593 (S.D. Ala. 2007) ("the entry of default judgment . . . in no way obviates the need for determinations of the amount and character of damages.").

The case of *Hall v. Lovell Regency Homes Ltd. P'ship*—relied on heavily by Davis—sets forth the relevant standard for measuring damages as follows:

---

[1] As to the count for fraud, the Court notes that Davis has failed to allege with particularity the circumstances of the alleged fraud, as required by Federal Rule of Civil Procedure 9(b). *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Accordingly, there is a separate and independent ground for denying default judgment with respect to that claim.

> The amount of damages recoverable for breach of contract is that which will place the injured party in the monetary position he would have occupied if the contract had been properly performed. In a breach of contract action for defective performance of a real estate construction contract, the primary measure of damages is the cost of repairing or remedying the defect. If the plaintiff presents proof that repairing the defect in the property would be infeasible or impracticable, however, an acceptable secondary measure of damages is the loss in value of the property caused by the breach, *i.e.*, the difference between the fair market value of the property without the defect and the fair market value of the property with the defect.

708 A.2d at 349-50 (citations omitted). The *Hall* standard allows a court to determine the damages based *either* on the cost of repair *or* the loss of value, but not both. *Id.* Awarding *both* measures of damages would allow for an unlawful "double recovery of damages." *Montgomery Ward & Co. v. Cliser*, 298 A.2d 16, 26 (Md. 1972) (quoting 25 C.J.S. Damages § 3); *see also Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318 (1980) ("It also goes without saying that the courts can and should preclude double recovery by an individual.").

In this case, Davis has provided affidavit and other documentary evidence to establish the cost of repair, so the Court need not consider loss of value damages.[2] The Court notes, however, that not all of the costs Davis claims are in fact recoverable. Her damages are limited to the losses she incurred as a result of the breach; she is not entitled to recover costs that she would have incurred whether or not Equity Homes breached its contract. Thus, the Court declines to award Davis the costs related to her utilities, property taxes, or down payment on the home, all of which she would have incurred even if there had been no breach. The Court will,

---

[2] While the Court rejects Davis's claim for the full contract price of the home on the basis that awarding the loss of value to the home would constitute a duplicative award, the Court notes that even if Davis had sought loss in value to the home *instead of* the costs of repair, she has failed to provide sufficient support to establish that the home has zero value.

however, award Davis the costs incurred (1) to repair the damage ($5,860), (2) to rent another residence ($44,400), and (3) to store personal property ($4,849), for a total of $55,109.

Davis also seeks punitive damages. None will be awarded. It is well established in Maryland that "punitive damages cannot be awarded in a pure breach of contract case, although they are recoverable in tort actions arising out of contractual relationships where actual malice is present." *Sims v. Ryland Group, Inc.*, 378 A.2d 1, 4 (Md. Ct. Spec. App. 1977). Maryland courts define "actual malice" as "conduct of the defendant characterized by evil motive, intent to injure, ill will, or fraud." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 837 (Md. 2004) (quoting *Owens–Illinois, Inc. v. Zenobia*, 601 A.2d 633, 652 (Md. 1992)). Thus, "'negligence alone, no matter how gross, wanton, or outrageous, will not satisfy [the] standard [of actual malice].'" *Darcars Motors of Silver Spring, Inc.*, 841 A.2d at 837 (alteration in original) (quoting *Owens–Illinois, Inc.*, 841 A.2d at 837). Because Davis has failed to allege any facts establishing that Equity Homes had actual malice, the Court declines to award punitive damages.

### IV.

For the foregoing reasons, default judgment is **GRANTED** in the amount of $55,109. A separate Order and Final Order of Judgment will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

October 17, 2011